SAMUEL G. FLEWELLING

*vs.*

LEWISTON & AUBURN HORSE RAILROAD COMPANY.

Androscoggin.     Opinion February 24, 1897.

*Street Railways.    Ways.    Travelers.    Contributory Negligence.*

Electric street-cars have, in a qualified way at least, the right of way as against persons traveling on foot or with teams and carriages, in the same manner as ordinary steam railroads have; and all such persons should carefully observe the movements of street cars when likely to meet them, and leave them an unobstructed passage as well as they reasonably can.

Great care must also be exercised by motor-men and conductors on the street cars to see that no injury be caused by themselves to either persons or property.  Street cars are granted very great privileges out of the public right, and their treatment of the public must be reasonable in return; so that when a person or a team, through accident or misjudgment, or for any cause, be caught in any position of peril by coming in close contact with a car, it is the duty of those managing the car to use all possible effort to avoid collision or injury.

Any person driving a horse on the street, especially an unbroken or uncertain animal, should exercise very great care and caution so as to pass the cars safely.  But he is not to be debarred from reasonable opportunities in a reasonable manner to exercise his horse, young or old, spirited or dull, in the presence of either stationary or moving cars, in order to accustom his horse to such sights and sounds as the running cars produce, if he can.

ON MOTION BY DEFENDANT.

This was an action on the case to recover damages for personal injuries sustained by the plaintiff in a collision between one of the defendant's electric cars; and also by the plaintiff's horse and road-cart which he was driving along Pine street, in the city of Lewiston, April 25, 1895.

The jury returned a verdict for the plaintiff, damages $2797.85. Plaintiff's first count alleged a great and unlawful speed of the car, and the consequent loss of control of the car.  His second count alleged a rate of speed in excess of that allowed by the city ordinance.

(Second count of declaration.)

Also for that the said defendant corporation, on the twenty-fifth day of April, 1895, owned and was then operating a street railway in said Lewiston, and then and there using in its said business cars driven along the street by means of electricity; that, on said day, while the plaintiff was lawfully driving his team, consisting of his horse and road-cart to which his horse was properly harnessed, said horse, harness, and road-cart being then and there suitable and proper to be used by him, over and upon Pine Street, a public highway in said Lewiston whereon said defendant was then and there maintaining its track and operating and driving its cars as aforesaid, said plaintiff being then and there in the exercise of due and proper care and without negligence on his part, an electric car of the defendant, then and there managed, controlled, directed, governed, and operated by the servants and agents of the defendant, said car being then and there propelled by the defendant at a rate of speed greatly in excess of the maximum rate of speed prescribed by law and the ordinances of the city of Lewiston in such case made and provided, and in violation of said ordinances, was then and there negligently, carelessly and at an undue, unreasonable, dangerous and unlawful rate of speed driven by the said defendant against the road-cart containing the plaintiff, so that the plaintiff was then and there thrown suddenly and with great force and violence from his seat down upon the ground and upon the track of the defendant, was stunned by the fall, his right hand run over by a wheel of said car, his body bruised and jammed, his leg and body severely burned by the electric current, and he then and there sustained other great and painful bodily injuries, external and internal; in consequence of which he suffered greatly in body and mind, was compelled to have his said right hand amputated, to submit to a long course of medical and surgical treatment for his recovery from said injuries, and put to great expense for medicine, medical attendance, and nursing, and has been otherwise greatly damaged.    Plea, general issue.

The plaintiff offered testimony showing that on April 25, 1895, Fast Day, about 3 o'clock in the afternoon, he was driving on Pine

Street in Lewiston, on the right hand side of the street in a road-cart, so-called, a two-wheeled vehicle, drawn by his horse four years old and weighing about 1100 pounds, a horse of gentle disposition, well broken to harness and accustomed to electric cars. At a point in said street, opposite the residence of Z. Blouin, he met a car of the defendant corporation. The sidewalk was full of people going to a ball game. The track of the defendant was in the centre of the street, which is fifty feet wide from street line to street line outside limits. The street along by the place of the accident is practically level.

The horse of the plaintiff and the car of the defendant, coming from opposite directions were approaching each other. The horse, when at a point about sixty feet or more from the approaching car, began to act afraid of it and tried to sheer toward the sidewalk. The plaintiff reined his horse firmly to keep in the street, and avoid running down the people on the sidewalk. The car, as the plaintiff's evidence shows, was running very fast, and the heavy current was snapping and buzzing on the trolley line. The spectacle terrified the horse. Not being allowed to dash upon the sidewalk, the horse in his fright and terror suddenly bolted across the track in the face of the car. The car collided with the vehicle of the plaintiff with great force. So great was the force that the brake of the car, a rod of iron one and one-half inches in diameter was broken short off by the collision. The road-cart of the plaintiff was instantly demolished, and the plaintiff and his companion were thrown and dragged upon the ground until the car could be stopped. The injuries of the plaintiff were severe. His back was injured. His head was cut by a gash four inches long. His left hand was burned to a blister. His right leg was burned. And his right hand was crushed and had to be amputated.

On the other hand, the defendant contended that the plaintiff was guilty of contributory negligence; that the defendant was guilty of no negligence; was not running its cars at an unlawful or unreasonable rate of speed, and even if it was, such speed neither caused nor contributed to the accident. The defendant claimed that the undisputed facts were substantially as follows:—

The plaintiff at the time of the accident was engaged in handling and selling horses at Symonds' stable in Lewiston. The colt which the plaintiff was driving was one of a carload of horses brought from Kansas by a Mr. Poor, which arrived April 8th, being seventeen days before the accident occurred on Fast Day, the 25th. There was an unusual number of teams and cars in the street on that day. The plaintiff harnessed this horse into the road-cart, took in Frank Edgecomb, whose brother wanted to buy a horse, and rode out into the streets. They drove up through Main Street, passing a car in Haymarket Square, through Sabattus Street to Pine Street, which they entered near Nichols Park. They were scarcely in Pine Street when the car was noticed coming up the street, then at a long distance from them. They proceeded down the street until they came into collision with the car near Mr. Blouin's house.

*W. H. Judkins*, for plaintiff.

Counsel argued:—The plaintiff's horse was kind, gentle, well broken to harness and used to electric cars. The plaintiff was an experienced man in driving horses. The horse was properly harnessed in a proper vehicle. It was the defendant's duty to run its cars at a reasonable and proper rate of speed, with due care and attention to the rights of travelers having the right to pass with teams up and down the street by the side of its tracks. When the plaintiff turned into Pine Street, he had a right to presume and assume that the defendant would observe its duty in this respect. These are the factors entering into the propriety of driving into the street. The plaintiff was alert, and giving his entire attention to the care of his horse. The defendant does not claim but that the plaintiff tried to manage and control his horse to the best of his judgment, knowledge and ability.

An electric car running at a high rate of speed in the centre of a public highway is a very dangerous looking and threatening object to man or beast, and one calculated to frighten horses; that it is the high rate of speed which terrifies horses; that when horses are frightened at a rapidly approaching car, and the car is made to go slow, they pass the car safely; that their terror may be

roughly stated to be in a direct ratio to the speed of the car. I appeal to the every day observation of this court for confirmation of the truth of this proposition. You cannot ride a mile on an electric car in a busy street without observing the fact. Motormen instinctively and involuntarily act upon the idea. The ordinance established by the city of Lewiston is based upon the truth of this proposition. I emphasize this proposition because as the learned presiding judge expressed it thus in his charge:—"There is the hinge on which this case turns." The electric power was not shut off; otherwise the plaintiff and his companion would not have been burned. Science cannot lie. The motor-man had sufficient warning of the fright of the horse.

The defendant's car was running at a very high rate of speed. A fair preponderance of the evidence shows it to be from twenty to twenty-five miles an hour. The finding of plaintiff's watch five or six feet behind the car when stopped is one undisputed fact contradicting the evidence of all of defendant's witnesses as to the speed of the car. The broken brake-iron and the finding of the watch are two impregnable facts for the plaintiff.

The defendant has no testimony in the case of any act done by the plaintiff at the time of the accident that he ought not to have done, or any act of his left undone that he ought to have done; that is, assuming plaintiff had a right to be on the street with his horse, the case does not show on the defendant's testimony any act of negligence on the part of the plaintiff. Defendant's witnesses were repeatedly asked to state, if they could, anything which in their judgment, based on their direct observation of all that happened, the plaintiff did, or left undone, that was improper or negligent, and not a witness could mention a fact.

The rule of law in relation to violations of city ordinances is, that such violations are evidence, but not conclusive evidence of negligence. *Hanlon* v. *South Boston R. R. Co.* 129 Mass. 310.

The plaintiff's previous rate of speed, were it fast or slow, had nothing to do with the accident. Plaintiff at the instant of the accident, was not going toward the car at all, but was across the track. His momentum did not, therefore, increase the force of

the collision, or the severity of the injury. In other words, at the precise time of the accident, plaintiff was not violating the ordinance at all. His previous violation of the ordinance has nothing to do with the case, even if the ordinance were a reasonable one.

But the defendant was violating the ordinance at the very instant of the collision. The plaintiff and defendant are not in the same boat with respect to violations of the ordinances. A distinction fairly and truly exists.

The defendant may argue, that plaintiff should have turned up Clay Street, because the horse showed signs of fright there. Defendant also argues that the motor-man had no warning of the fright of the horse, because the horse did not show any signs of fright until within 15 or 20 feet of the car, a point from 80 to 100 feet west of Clay Street. The two positions are contradictory. Both cannot be right, and neither is right. The horse had passed Clay Street but had not had time to reach Bradley Street, when she began to be frightened. The weight of the testimony from witnesses on both sides is, that the horse began to act afraid when about 60 feet from the car.

The rate of speed can be estimated approximately. The Lewiston loop of the figure 8, so-called, is over 2 1-2 miles long. The running time was 20 minutes; this would be at the rate of 7 1-2 miles per hour, if there were no delays at crossings, turnouts or for passengers. There were about 40 passengers on the car. Inasmuch as the Lewiston loop of the figure 8 is as long as the Auburn loop, it is fair to assume that 20 passengers got on, and the same number got off in passing around the Lewiston loop. At least five seconds would be consumed on an average by the getting on, or by the getting off, of each passenger. If this be correct, 3 1-3 minutes are consumed by passengers getting on and off. That would leave 16 2-3 minutes for running the 2 1-2 miles. This would be an average of nine miles per hour. And this computation does not take into account the habitual delays at the head of Lisbon Street, where one car has to wait for the other, there being only one track there, etc. Then there are constantly occurring special delays.

Fright as related to proximate cause.: *Willey* v. *Belfast*, 61

Maine, 569; *Lake* v. *Milliken*, 61 Maine, 240; *Clark* v. *Lebanon*, 63 Maine, 395; *Card* v. *Ellsworth*, 65 Maine, 547; *Cleveland* v. *Bangor Street Railway*, 86 Maine, 232; *Spaulding v. Winslow*; 74 Maine, 535.

*W. H. White and S. M. Carter*, for defendant.

The plaintiff was guilty of contributory negligence: Because it was imprudent and unreasonable to attempt to drive this horse upon Fast Day through streets where he must expect to meet the cars of the defendant road,—to drive this green colt out into the crowded street in the proximity of the electric cars. Because the course of the plaintiff, after he got into Pine Street and knew the car was coming, was a persistent pressing forward into a well-recognized place of danger that resulted in his injury, although the means of escape were easy at hand, easily accessible and well known to him by turning off into a side street. Not only did he reach the side street and pass it, but he even drove past Clay Street with his horse then showing evident signs of fright. No prudent man thinking only of his own safety would have done it. The plaintiff did not. The accident was due wholly to his own refusal to avail himself of the means of safety open to him and recognized by him as such, and his gross mismanagement of the horse when in close proximity to the car. He came down into Pine Street with a green Kansas colt with which he had had seventeen days experience; and according to the plaintiff's witnesses there was approaching a car at a rate of speed estimated from twenty-five to forty miles an hour, coming up through a thickly-settled portion of the city at this fearful rate. The faster the car was coming, the more frightful its appearance, the more unusual its surroundings, the greater the duty upon the plaintiff to have turned down into Clay Street and avoided the chance of trouble.

Because the plaintiff sought the proximity of the cars and the dangers attendant thereon, which resulted in his injuries, for the purpose of exhibiting to his companions under just those circumstances the colt which he was driving.

The defendant corporation cannot be made responsible for the

results arising from the plaintiff's endeavoring to ascertain for himself, or demonstrate for another, what the horse would do when driven into a dangerous place.   Croswell on Electricity, § 747 ; *Cornell* v. *Detroit Electric Ry. Co.*, 82 Mich. 499, (46 N. W. Rep. 791) ; *Pittsburgh Southern Ry. Co.* v. *Taylor*, 100 Pa. St. 306, (49 Am. Rep. 580) ; *McGee* v. *Consolidated St. Ry. Co.*, 102 Mich. 107, (47 Am. St. Rep. 507).

With his eye upon the horse the motor-man detected the first sign of trouble, and when the horse broke and reared, he set the brake with all his might, setting it so hard that they had to pry the dog out with a switch iron, and bringing the car to a stand within eight feet from the place where it struck the cart.

What more could the employees of this corporation have done ? If the court were to sit here and formulate rules for their guidance under just these circumstances, what would it order them to do which they omitted to do or to omit which they did ?   The car was rightfully on the track and there operated by authority of law. It had a paramount right to the use of that portion of the street occupied by the track.   This the plaintiff was aware of and he knew that he was bound to keep clear of the car.   The car itself could not turn out for him.

Having the right to operate the car in the street, the company is not liable for fright caused to horses by the reasonable exercise of their right.   The company has equal rights with all other travelers in the general use of the road and are under obligations to their patrons to convey them upon reasonable schedule time and to avoid unnecessary delays.   Travelers using the car have the same rights to have a reasonable use of the highway made in their behalf by the corporation as the individual traversing the road with his team.

Booth in his work on Street Railways says :   " To the extent that travelers, whether in cars, on foot or in private vehicles have the right to proceed without interruption or delay, the rights of all are equal, and the law makes no distinction between the vehicles used or the means employed.   No other rule would be reasonable or practicable ; for if drivers, motor-men and grip-men were required to stop their cars, slacken their speed or omit or discon-

tinue necessary signals upon which the safety of others depends because timid horses might become frightened or already manifest symptoms of fear not indicating imminent peril, street-railway service would be so. materially embarrassed by numerous delays as to defeat the purpose for which such franchises are maintained, and the dangers to the general public for whose protection warnings are given would be greatly enhanced." Booth on Street Railways § 298; Croswell on Electricity § 746.

Whatever the rate of speed may have been it had nothing to do with the frightening of this horse. There is no evidence that the rate of speed had anything to do with the accident. The case is not like one of crossing the track from a side street. The only possible effect which the rate of speed could have had was in producing the fright. So far as causing the collision after the fright is concerned, there is just as much ground to claim that the car if going faster would have gotten by before the horse got on to the track as that he would have gotten over the track in safety if the rate of speed had been slower. Common experience teaches us that it is the steady approach of the car without animals attached to it, until it gets into the close proximity of the horse, rather than the rate of speed, which causes fright. The presumption is against fright having been caused by the rate of speed.

In the case of *Cornell* v. *Electric Ry.*, 82 Mich. 495, (46 N. W. Rep. 791), the negligence claimed was the running of the car at a great rate of speed, and the court say: "It was evidently the sight of the moving cars and not their speed that frightened the horse."

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, STROUT, JJ.

PETERS, C. J. We apprehend that electric street cars have, in a qualified way at least, the right of way as against persons on foot or traveling with carriages and teams in the same manner as ordinary steam railroads have. And all persons passing on foot or traveling by the common methods on the highways should care-

fully observe the movements of the street cars and leave them an unobstructed passage as well as they reasonably can.

But great care must also be observed by conductors and drivers, or motor-men, upon the cars to see that no injury be caused by themselves to persons or teams. Street railroads are granted very great privileges out of the public right, and their treatment of the public must be reasonable in return; so that when a person or a team, through accident or misjudgment or for any cause, be caught in a position of any peril by coming in collision or close contact with the cars, it is the duty of those who are managing the cars to use all possible effort, by slackening the speed of a car or stopping it altogether, in order to avoid injury. If a horse driven by a traveler appears to be restive or refractory at the sight of a moving car the movement of the car should be managed in such a way as to relieve, if possible, the traveler in his dilemma. For these reasons, as well as for the general safety of passengers within and persons outside of the cars, the rate of speed should be reasonable according to circumstances.

The city ordinance of Lewiston limits the cars of this road to a speed of five miles an hour.

On both points to be considered, more especially on the second, the case in hand is a somewhat close one. The plaintiff contends that the car, with which his horse and carriage collided, was running at the time with an extraordinary and reckless rate of speed. This position of fact, as maintained by the plaintiff, is strongly contested by the defendant, and whilst there is much testimony bearing on this contention pro and con, we cannot very well assume the decision of the question ourselves and determine that the jury committed a mistake. The implication of the verdict is, that the unreasonable speed of the car caused or increased the fright of plaintiff's horse, thereby causing the accident by which the plaintiff received his very serious injury.

The more doubtful question, perhaps, is whether or not the plaintiff was himself guilty of some recklessness and carelessness which contributed in causing the injury. Any person driving a horse, on the street, especially an uncertain and unbroken animal,

when likely to meet a car, should exercise very great care and prudence so as to cope with the occasion with safety, and, if he fails to do so, he enters on a reckless experiment at his own risk. At the same time he is not to be debarred from reasonable opportunities in a reasonable manner to exercise his horse, young or old, spirited or dull, in the presence of either stationary or moving cars, in order to accustom his horse to them if he can.

The horse driven by the plaintiff when he was injured was but four years old. But his driver was an experienced and fearless horseman, and he says that during the seventeen days he had owned him prior to the accident, he had been driven frequently by the cars without his showing any sign of fear or fright, and was a horse of good natural disposition.

The defense strongly urges that he could have and should have turned off into a cross street when his horse began to misbehave, and that in that way there was an easy opportunity to have avoided the collision; and the plaintiff explains his conduct in that respect upon his theory of the situation.

Although there is force in the position of the defense, still we hardly think we should overrule the implied finding of the jury on this point even, and so we therefore feel constrained, all things considered, to allow the verdict to stand.

*Motion overruled.*